NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

MALIK FLOWERS,

                Petitioner,

            v.

ADMINISTRATOR STEPHEN
JOHNSON, et al.,

                Respondents.

_____

Civ. No. 18-4757 (CCC)

**OPINION**

**CECCHI, District Judge**

Pro se petitioner Malik Flowers, a state prisoner at Northern State Prison in Newark, New Jersey, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 7. For the reasons below, the petition is denied and a certificate of appealability shall not issue.

## I.      BACKGROUND

### A.   Factual Background[1]

Flowers's conviction arises from his role in the armed robbery of a deli in Jersey City, New Jersey. The facts are set forth in greater detail in the opinion of the Superior Court of New Jersey, Appellate Division, on Flowers's direct appeal of his conviction and sentence:

> On April 17, 2017, a man later identified as defendant [Flowers] entered a deli in Jersey City at about 10 p.m. Armed with a handgun, he pulled the storefront gate halfway down and put a mask on. Then a second man, unmasked and later identified as co-defendant Aleem Mallard, entered and pulled the gate completely shut.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), this Court affords deference to the factual determinations of the State court. *Id.* ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

Defendant brandished the gun at the three deli employees and demanded money. He struck an employee named Pedro on the head with his gun and took Pedro's money and cell phone. After taking employee Tareek Ali's wallet, chain, and money, the gunman removed about $1200 from the cash register. Then the two men exited through the front door of the store. The incident lasted approximately fifteen minutes.

After the intruders left, Ali called the police, who responded to the scene. Approximately thirty minutes later, the police brought to the store two suspects found driving a car similar to the robbers' vehicle. Ali stated that they were not the men responsible for the crime. The police officers then took Ali to the police station, where an officer soon told him that the police found two more suspects he could observe.

Around the same time as the robbery, Francisco Fernandez was looking out his third floor apartment window approximately thirty to fifty feet from the deli. He noticed two "suspicious" men near a green Dodge. Both were African-American, around six feet three inches tall, weighing around 220 to 240 pounds. Fernandez noted that the man closer to his window was crouching down and signaling to the other man down the block, pointing in the direction of the store. The man nearer to the store appeared to be in his late twenties or early thirties, wearing a red shirt. The other man, who appeared older, wore a black shirt and dark jeans.

After observing for a few minutes, Fernandez witnesse[d] the two men get into the Dodge and drive away. He noted the license plate number when the car's lights were turned on and called the police. Shortly thereafter, he saw the police arrive at the deli and learned of the robbery. Fernandez never saw defendant or Mallard enter or exit the deli. In court he identified defendant as the older man and Mallard as the man closer to the deli.

Based upon the license plate number provided by Fernandez, Detective Joseph Walsh drove Fernandez to an address on Fulton Street. On route, they saw the Dodge with the same license plate drive past them, and Walsh pursued the vehicle. During the chase the Dodge crashed into a metal pole and the driver and passenger exited the car. Fernandez identified them to the police as the suspicious men he viewed from his apartment.

The police immediately arrested both defendant and Mallard. The police recovered a loaded handgun from the trunk, $511 from Mallard's clothing, $831 from defendant's pants pocket, and five of Ali's credit cards from defendant's boots.

When the police took Ali to the crash site, they brought defendant to him in handcuffs, shined a light in defendant's face, and asked if he was one of the robbers. Ali identified him as the man who had the gun and identified the handgun as the weapon used by the assailant during the robbery.

*State v. Flowers*, No. A-2401-09T3, 2013 N.J. Super. Unpub. LEXIS 1962, at *2-5 (Super. Ct. App. Div. Aug. 5, 2013).

### B. Procedural History

In April 2009, Flowers was tried before a jury and convicted of first-degree robbery, second-degree possession of a firearm for an unlawful purpose, fourth-degree aggravated assault by pointing a firearm, third-degree unlawful possession of a handgun, and second-degree possession of a firearm by a convicted felon. *State v. Flowers*, No. A-5701-18, 2021 WL 3177711, at *1 (N.J. Super. Ct. App. Div. July 28, 2021). In June 2009, the trial judge sentenced Flowers to 35 years of imprisonment, with an 85% period of parole ineligibility and 5 years of parole supervision. The judge also imposed a 10-year term of imprisonment with a 5-year period of parole ineligibility on the second-degree unlawful possession of a firearm by a convicted felon offense, to run consecutively to the 35-year term. *Id*. The Appellate Division affirmed in 2013, *id.*; certification was denied in 2014, *State v. Flowers*, 217 N.J. 588 (2014).

In June 2014, Flowers petitioned for post-conviction relief ("PCR"), alleging ineffective assistance of counsel. *Flowers*, No. A-5701-18, 2021 WL 3177711, at *1. The PCR court denied the petition in 2015, *id.*; the Appellate Division affirmed in 2017, *id.*; certification was denied in 2018. *State v. Flowers*, 232 N.J. 158 (2018). Flowers filed a second PCR petition in November 2018, arguing that the judge who denied the first PCR petition should have recused. *Id.* The PCR court denied that petition in 2019, *id.* at *2; the Appellate Division affirmed in July 2021, *id.* at *3; certification was denied in October 2021, *State v. Flowers*, 248 N.J. 533 (2021).

### C. The Habeas Petition

Flowers filed his initial habeas petition in March 2018 (after his first PCR petition was denied, but before he filed his second PCR petition). ECF No. 1. In July 2018, he moved for a stay

to exhaust a claim relating to an alleged conflict of interest by the first PCR judge. ECF No. 3. The Court denied that motion in February 2019. ECF No. 5. In April 2019, Flowers filed an amended petition along with another motion to stay. ECF Nos. 7, 7-1. The amended petition raises the following grounds for relief: (1) the trial court's reference to Flowers in the accomplice liability instruction as the principal "who actually committed the act" was improper and amounted to an inappropriate directed verdict (ECF 7-2 at 2–3); (2) the identification instruction improperly emphasized the State's evidence against Flowers without mentioning defense evidence of misidentification (*id.* at 3–6); (3) the trial court improperly refused to instruct the jury on "false-in-one, false-in-all," as requested by counsel (*id.* at 6–8); (4) trial counsel was ineffective because he failed to cross-examine the State's witness, Francisco Fernandez, about his prior record and pending charges (*id.* at 8–10); (5) trial counsel was ineffective because he failed to object to the above-referenced improper jury instructions (*id.* at 10–12); (6) appellate counsel was ineffective for failing to raise the issues of the trial court's denial of Flowers's suppression and *Wade*[2] motions (*id.* at 12–17); and (7) PCR counsel was ineffective for failing to request that the first PCR judge recuse based on a conflict of interest (*id.* at 17–19).

The Court denied Flowers's second motion to stay. ECF No. 9. Thereafter, Flowers moved to delete his unexhausted conflict claim (ECF No. 10), and the Court granted the motion (ECF No. 12). In January 2022, Flowers moved to reinstate the now-exhausted conflict claim (ECF No. 13), which motion the Court granted (ECF No. 14). The State responded to the amended petition on November 16, 2022 (ECF. No 18), and Flowers replied on February 7, 2023 (ECF No. 19).

---

[2] "The 'purpose of a *Wade* hearing is to determine [before] the trial whether pretrial identification procedures have been so improperly suggestive as to taint an in-court identification.'" *Balcacer v. Nogan*, No. 19-22029, 2022 WL 17751307, at *8 (D.N.J. Dec. 19, 2022) (quoting *Lynn v. Bliden*, 443 F.3d 238, 248 (2d Cir. 2006)).

## II.   LEGAL STANDARD

The district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A petitioner must establish his entitlement to relief for each claim presented in his petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013); *Parker v. Matthews*, 567 U.S. 37, 40–41 (2012). District courts are required to defer to the determinations of the state trial and appellate courts. *Renico v. Lett*, 559 U.S. 766, 773 (2010).

If the state courts have adjudicated a claim on the merits, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2). Federal law is "clearly established" if it is clearly expressed in "the holdings, as opposed to the dicta" of the United States Supreme Court. *See Woods v. Donald*, 575 U.S. 312, 316 (2015). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id*. If a petitioner challenges a state court's allegedly erroneous factual determination, the state court's determination "shall be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Under these standards, the relevant state court decision for federal habeas corpus review is the last reasoned state court decision. *See Bond v. Beard*, 539 F.3d 256, 289–90 (3d Cir. 2008).

These standards apply "even where there has been a summary denial" by the state court. *Cullen v. Pinholster*, 563 U.S. 170, 187 (2011).

## III.   DISCUSSION

### A.  Grounds One, Two, and Three: Jury Instructions

"Questions related to jury charges are normally matters of state law and are not cognizable in federal habeas review." *Paulino v. Ortiz*, No. 03–4463, 2005 WL 2922369, at *4 (D.N.J. Nov. 4, 2005); *see also Estelle v. McGuire,* 502 U.S. 62, 71–72 (1991) ("the fact that [an] instruction was allegedly incorrect under state law is not a basis for habeas relief"). "A habeas claim will lie only where the jury instruction is so prejudicial as to amount to a violation of due process and fundamental fairness." *Freeman v. Davis*, No. 18-8269, 2021 WL 4705009, at *8 (D.N.J. Oct. 7, 2021) (quotations omitted); *see also Gov't of Virgin Islands v. Smith*, 949 F.2d 677, 684 n.7 (3d Cir. 1991) ("[A] habeas corpus petitioner faces a heavy burden in challenging allegedly defective jury instructions. The petitioner must show that the offending instruction is so oppressive as to render a trial fundamentally unfair.") (internal quotation marks and citation omitted). "[A] habeas petitioner must demonstrate both (1) that the instruction contained some ambiguity, inconsistency, or deficiency, and (2) that there was a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." *Williams v. Beard*, 637 F.3d 195, 223 (3d Cir. 2011) (quotations and citations omitted). "An omission, or an incomplete instruction is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).

### 1.    Ground One: Accomplice Liability Instruction

During the instruction on accomplice liability, the trial judge stated:

So in this case, the State alleges that Aleem Mallard is guilty of the two crimes I just told you [about], armed robbery and possession of a weapon for an unlawful purpose, because he acted as an accomplice to Mr. Flowers.

In order to find the defendant guilty, the State must prove beyond a reasonable doubt each of the following elements; . . . that [Flowers] committed the act of armed robbery and possession of a weapon for an unlawful purpose, and I've already explained the elements of those offenses. That Mr. Mallard aided, or agreed, or attempted to aid him in planning or committing these crimes, that his purpose was to promote or facilitate the commission of the offense, and that he possessed the same criminal state of mind that is required to be proved against [Flowers], who actually committed the act.[3]

ECF No. 18-25 at 93; *Flowers*, 2013 N.J. Super. Unpub. LEXIS 1962, at *6.

Flowers argues that the trial court's reference to him as the principal "who actually committed the act" amounted to an inappropriate directed verdict. ECF 7-2 at 2. The Appellate Division rejected this argument, finding that, in context, it was "clear the judge was not making a determination of [Flower's] guilt." *Flowers*, 2013 N.J. Super. Unpub. LEXIS 1962, at *9; ECF No. 18-4 at 20–21. The court reasoned:

The judge stated initially that the State's theory was that defendant committed the robbery and that Mallard was his accomplice. In the sentence prior to the challenged one, the judge instructed the jury that the State "must prove beyond a reasonable doubt each of the following elements . . . that [defendant] committed an act of armed robbery and possession of a weapon for an unlawful purpose . . . ." Shortly after the instruction at issue, the judge explicitly noted again that the defendant's commission of the robbery was an allegation, that "the State alleges . . . [defendant] entered the store, that he had the gun with the purpose . . . to perform a robbery . . . ." Moreover, . . . the trial judge clearly pointed out that the State bore the burden of proving each and every element beyond a reasonable doubt.

---

[3] In the Model Jury Instruction the phrase is "person who actually committed the act." *Flowers*, 2013 N.J. Super. Unpub. LEXIS 1962, at *6 n.2 (quoting *Model Jury Charges (Criminal)*, "Liability for Another's Conduct" (revised May 22, 1995)).

Although the last part of one sentence might have been poorly worded, we do not agree that it was misleading or amounted to a directed verdict. The judge was simply addressing allegations against Mallard and did not preclude the jury from determining an element to the crime, or narrow the jury's options for conviction or acquittal.

Furthermore, in the unlikely event that the use of defendant's name seemed to a juror to suggest that he was guilty, viewing the judge's brief statement within the context of the entire jury charge, we are convinced that defendant did not suffer any prejudice. The jury had sufficient guidance from the very thorough jury instructions to make its own informed determination of defendant's guilt on all elements of the crimes charged. We conclude that the error, if any, was harmless.

*Flowers*, 2013 N.J. Super. Unpub. LEXIS 1962, at *9–10.

Flowers has not established that the trial judge's one-off reference to him as the principal who "actually committed" the act rendered his trial fundamentally unfair because he has not demonstrated that the jury likely applied the court's instruction in a way that relieved the State of its burden of proof. *See Williams*, 637 F.3d at 223. To the contrary, the judge advised the jury explicitly and repeatedly that the State carries the burden of proof.[4] Thus, as the Appellate Division found, "[t]he jury had sufficient guidance from the very thorough jury instructions to make its own informed determination of [Flowers's] guilt on all elements of the crimes charged." *Flowers*, 2013 N.J. Super. Unpub. LEXIS 1962, at *10.

---

[4] *See*, *e.g.*, ECF No. 18-25 at 77 ("The burden of proving each element of a charge beyond a reasonable doubt rests on the State, and that burden never shifts to the defendant."); *id.* ("The State has the burden of proving the defendants guilty beyond a reasonable doubt."); *id.* at 82–83 ("The burden of proving the identity of the person who committed the crime is upon the State."); *id.* at 83 ("For you to find these defendants guilty, the State must prove beyond a reasonable doubt that these defendants are the persons who committed the crime."); *id.* ("You must determine . . . not only whether the State has proved each and every element of the offense beyond a reasonable doubt, but also whether the State has proved beyond a reasonable doubt that these defendants are the persons who committed it."); *id.* at 86 ("you will consider whether the State has proven each and every element of the offenses charged beyond a reasonable doubt"); *id.* at 86–100 (repeatedly reiterating during the instructions covering the elements of the offenses that the State must prove each element beyond a reasonable doubt).

When taken as a whole and viewed in the context of the complete charge, the offending phrase was not so oppressive as to render Flowers's trial fundamentally unfair. *See Cupp v. Naughten*, 414 U.S. 141, 147 (1973) (noting the "well[-]established proposition that a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge"); *Corbin v. Tice*, No. 16-4527, 2021 WL 2550653, at *2 (E.D. Pa. June 22, 2021) ("Challenged jury instructions are considered in their totality rather than just sentences or paragraphs in isolation.") (citing *Bey v. Superintendent Green SCI*, 856 F.3d 230, 241 n.54 (3d Cir. 2017)). On this record, the Appellate Division's finding that the trial judge's error, if any, was harmless was not contrary to or an unreasonable application of Supreme Court precedent, or based on an unreasonable determination of the facts in light of the evidence. Accordingly, this claim provides no basis for habeas relief.

### 2.     Ground Two: Identification Instruction

At the start of the identification instruction, the trial judge summarized the testimony of Ali and Fernandez as follows:

> Now with regard to identification, the State has presented the testimony of Tareek Ali and Francisco Fernandez. You will recall that Mr. Ali identified the defendants in court -- well, he identified one person in court, he identified Mr. Flowers, also known as Sanders, in court as the person who committed the robbery. And Mr. Fernandez identified both defendants in court as the person he saw on his block on Wright Street at or about the time the robbery allegedly was committed.
>
> The State also presented testimony that on a prior occasion before this trial these witnesses, and that would be on the night of the robbery, these witnesses identified these defendants as the persons who -- whom they had seen earlier. In other words, over on West Side and Fisk Street at, what we call, a showup,[5] there was testimony that Mister Ali identified Mr. Flowers/Sanders as the person -- one of the people who had come into his store and robbed him while armed with a weapon.

---

[5] A "show-up" is an identification procedure "in which a single individual arguably fitting a witness' description is presented to that witness for identification." *United States v. Brownlee*, 454 F.3d 131, 138 (3d Cir. 2006).

At that same place and time on Wright -- on Fisk and West Side, the State presented testimony that Mister Fernandez identified both defendants, Mr. Mallard and Mr. Sanders, as the people he had seen on his block, crouching by a car, or gesturing, or doing the other things that he said, because those would -- and getting into a green car.

Now according to those witnesses, Ali and Fernandez, their identification was based upon the observations and perceptions that they made at the time the offence was committed, or in the case of Mr. Fernandez, at the time of the offense being committed in the area of the Logan Street Deli.

ECF No. 18-25 at 83. The remainder of the charge tracked the Model Jury Instructions. ECF No. 18-25 at 83–86; ECF No. 7-2 at 4.

Flowers argues that the quoted language improperly emphasized the State's evidence against him without mention of defense evidence of misidentification. ECF 7-2 at 3. The Appellate Division rejected this argument:

[D]efendant contends that the judge gave the jury favorable information supporting Fernandez's and Ali's identifications without similar mention of the defense's evidence undermining those identifications. This one-sided approach, the defendant argues, deprived him of due process and a fair trial. Moreover, defendant claims that Fernandez's sighting of two men near the deli was not an "identification" of a crime suspect and the inclusion of that fact in the jury instructions "improperly suggested that such circumstantial evidence *necessarily* bolstered Ali's identification . . . ." We find these arguments unpersuasive.

Additionally, the defendant argues . . . it was not enough for the court to give the existing Model Jury Instruction on the circumstances of a showup. Instead, the court should have informed the jury that showups are inherently suggestive, and elaborated on the facts of the showup. . . .

. . .

. . . From our review of the identification instructions, we do not find that the judge raised factual identification information favorable to the State in any significant way as to warrant similar information favorable to the defense. Here, as defendant acknowledged, the trial judge's identification jury instructions tracked the Model Jury Instructions almost verbatim. The judge simply mentioned testimony regarding Ali's showup identification and Fernandez's initial sighting of defendant as a prelude to the lengthy general Model Jury Instructions on identification. We do not agree that this brief review was so favorable to the State as to warrant contrasting defense evidence. The court did not inform the jury of inferences it

could draw from facts surrounding the eyewitness identifications, nor did it make any comments showing or inferring support based on that testimony.

Further, contrary to defendant's argument, the judge's mention of Fernandez's identification of the suspects did not impermissibly bolster the accuracy of Ali's identification. Rather, defendant was entitled to have the jury fully instructed as to the legal intricacies of identification when considering Fernandez's reported viewing of defendant. We conclude that taken in the context of the entire identification charge, the judge's brief account of both Ali's and Fernandez's identifications were proper to clarify the issues for the jury.

*Flowers*, 2013 N.J. Super. Unpub. LEXIS 1962, at *10–14 (emphasis in original; quotations and citations omitted).

Flowers has not established that the identification instruction—including the trial judge's summary of the identification testimony and failure to include information regarding the suggestiveness of showups and facts of the showup in this case—was so prejudicial as to amount to a violation of due process and fundamental fairness. *Freeman*, 2021 WL 4705009, at *8. The Appellate Division reasonably found that "taken in the context of the entire identification charge, the judge's brief account of both Ali's and Fernandez's identifications [was] proper to clarify the issues for the jury." *Flowers*, 2013 N.J. Super. Unpub. LEXIS 1962, at *14. Indeed, the judge did not express an opinion on the credibility of the testimony or the inferences to be drawn from it; rather, she properly informed the jury it had the discretion to credit—or not credit—the testimony. *See, e.g.*, ECF No. 18-25 at 83 ("It is your function to determine whether the witness's identification of the defendants is reliable and believable, or whether it is based on a mistake, or for any reason not worthy of belief."); *id.* at 84 ("The ultimate issues of trustworthiness of both the in-court and out-of-court identifications are for you to decide."); *id.* at 85–86 (same).

Further, the omission of information regarding the suggestiveness of showups does not provide a basis for habeas relief, as "there is no clearly established federal law requiring state courts to provide cautionary eyewitness-specific warnings in a jury instruction." *Goode v. Mears*,

No. 18-1553, 2022 WL 684410, at *8 (D. Del. Mar. 8, 2022). Although some federal and state courts have adopted specific instructions that "warn 'the jury to take care in appraising identification evidence,' the requirement to give such an instruction does not derive from the Due Process Clause or the United States Supreme Court." *Id.* (quoting *Perry*, 565 U.S. at 246).

The trial judge's failure to elaborate on the facts of the showup also does not provide a basis for habeas relief, as Flowers has no constitutional right to an instruction that relates the law to the specific facts of his case. *See Freeman v. Davis*, No. 2:18-CV-8269 (BRM), 2021 WL 4705009, at *9 (D.N.J. Oct. 7, 2021) ("Petitioner is arguing here that the jury instruction on causation should have been tailored to Petitioner's version of [the] facts of the case . . . . However, that is a State law claim and not a basis for habeas relief."); *Boretsky v. Ricci*, No. 09-0771, 2012 WL 664945, at *24 (D.N.J. Feb. 29, 2012) ("To the extent that [petitioner] contends that the instructions were unconstitutional because the judge did not specifically relate the law to the facts of the case, the claim fails because Supreme Court precedent does not require the instructions to relate the law to the facts.") (citation omitted).

On this record, the Appellate Division's rejection of Flowers's arguments regarding the identification instruction was not contrary to or an unreasonable application of Supreme Court precedent, or based on an unreasonable determination of the facts in light of the evidence. Accordingly, habeas relief on this claim is denied.

### 3.    Failure to Give "False-in-One, False-in-All" Instruction

Flowers argues that the trial court improperly refused to charge the jury with a "false-in-one, false-in-all" instruction, as requested by counsel. ECF No. 7-2 at 6. The Appellate Division rejected this argument as well:

> Defendant asserts that one of the primary arguments of the defense was that
> Fernandez and the police lied about the circumstances surrounding the crash during

the police chase. Based on the defense's expert metallurgist's testimony that the Dodge's trunk could not have sprung open when it crashed, defendant contends that the police and Fernandez knowingly gave false testimony, warranting the "false in one, false in all" instruction. The trial judge refused to charge the jury with this instruction when defendant requested it. The judge reasoned that the requested charge was "subsumed within the . . . general credibility charge."

. . .

We conclude that defendant's argument has no merit, as the "false in one, false in all" charge is clearly a discretionary charge that a judge is not required to give. In any event, the judge's charge on credibility covered much of what would be stated under the charge, and included the language, "you may accept all of the witness's testimony, a portion of it, or none of it." Consequently, the failure to give a "false in one" charge was not an abuse of discretion.

*Flowers*, 2013 N.J. Super. Unpub. LEXIS 1962, at \*14–16.

Flowers has not established that the trial court's refusal to give the requested charge impacted the fundamental fairness of the trial. A review of the entire charge reveals that: (1) the jury instructions on credibility were thorough—the jury was advised, *inter alia*, that it may accept all, part, or none of each witness's testimony; (2) the instructions adequately covered the evidence in the record; and (3) the jury was repeatedly instructed that the burden of proof remained with the State. *Flowers*, 2013 N.J. Super. Unpub. LEXIS 1962, at \*16 ("the judge's charge on credibility covered much of what would be stated under the charge, and included the language, 'you may accept all of the witness's testimony, a portion of it, or none of it'"); ECF No. 17 at 108–109 (in response to counsel's request for the "false in one, false in all" charge, the trial judge responded, *inter alia*: "The false in one is a very old charge. . . . We have a credibility charge that's much more modern than that, and a credibility charge that basically says that. . . . [T]he credibility of witnesses charge says through this analysis of judges of facts, you weigh the testimony of each witness and then determine the weight to give to it. Through that process you may accept all of it, a portion of it, or none of it. And that's basically what the false in one charge says, because we

already mention credibility whether he testified with the intent to deceive you. That's one of the things we consider.").

Thus, the absence of the requested instruction does not provide a basis for habeas relief. *See*, *e.g.*, *Soto v. Cameron*, No. 14-1331, 2015 WL 7965105, at *10 (E.D. Pa. July 15, 2015) ("Although the Superior Court recognized that the 'false in one, false in all' jury instruction was not given to the jury, it correctly noted that the charges which were given, read as a whole, informed each juror that he or she could choose to believe 'all, part or none' of each witness's testimony. Because both the instruction sought and the instructions given conveyed the same degree of jury discretion with regard to accepting witness testimony, it cannot be said that the decision not to provide the 'false in one, false in all' instruction ran afoul of Petitioner's due process rights"), *report and recommendation adopted*, 2015 WL 7888787 (E.D. Pa. Dec. 4, 2015); *Green v. Warren*, No. 12-6148, 2013 WL 6865420, at *10 (D.N.J. Dec. 20, 2013) (no constitutional violation for failing to "give false in one, false in all" instruction where "the trial court outlined for the jury the appropriate factors to consider when weighing the credibility of the witnesses it had heard and also gave detailed instructions on assessing the credibility of specific witnesses"). Accordingly, the Appellate Division's rejection of this claim was not contrary to or an unreasonable application of Supreme Court precedent, or based on an unreasonable determination of the facts in light of the evidence. Habeas relief on this claim is therefore denied.

**B.  Grounds Four, Five, Six, and Seven: Ineffective Assistance of Counsel**

The Sixth Amendment guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI; *see Strickland v. Washington*, 466 U.S. 668, 686 (1984). A claim of ineffective assistance has two necessary components. *Id*. at 687. First, the defendant must "show that counsel's representation fell below an objective standard of

14

reasonableness," *id.* at 687–88, meaning he "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. Second, a petitioner must establish prejudice, i.e., a reasonable probability that the result of trial would have been different absent the deficient act or omission. *Id.* at 687.

A criminal defendant also has a right to the effective assistance of appellate counsel on the first appeal as of right. *United States v. Scripps*, 961 F.3d 626, 632 (3d Cir. 2020). "[C]laims of ineffective assistance of appellate counsel are also governed by the *Strickland* standard." *Lusick v. Palakovich*, 270 F. App'x 108, 110 (3d Cir. 2008) (citing *United States v. Mannino*, 212 F.3d 835, 840 (3d Cir. 2000)); *Smith v. Robbins*, 528 U.S. 259, 285 (2000). "[I]t is a well established principle . . . that counsel decides which issues to pursue on appeal," *Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996), and appellate counsel need not raise every nonfrivolous argument a defendant wishes to pursue. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome." *See Robbins*, 528 U.S. at 288 (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)). To establish prejudice, a petitioner must show a reasonable likelihood that the court would have resolved the case differently on appeal if not for counsel's deficiencies. *See Mannino*, 212 F.3d at 845.

On habeas review, it is not enough that a federal judge would have found counsel ineffective. The judge must find that the state court's resolution of the issue was unreasonable—a higher standard. *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

Flowers argues that: (1) trial counsel was ineffective because he failed to (a) cross-examine the State's witness, Francisco Fernandez, about his prior record and pending charges, and (b) object to the above-referenced improper jury instructions; (2) appellate counsel was ineffective for

15

failing to raise the issues of the trial court's denial of Flowers's suppression and *Wade* motions; and (3) PCR counsel was ineffective for failing to request that the first PCR judge recuse based on a conflict of interest.

The Appellate Division summarized the PCR court's holdings on the claims related to trial and appellate counsel as follows:

> In rejecting defendant's ineffective assistance of counsel claims, the PCR court, citing *Strickland v. Washington*, 466 U.S. 668 (1984), and *State v. Fritz*, 105 N.J. 42, 519 A.2d 336 (1987), found defendant failed to establish a prima facie case with regard to trial counsel's failure to cross-examine Fernandez on his disorderly persons conviction. The court found that in 2007, the time the identification and statement were made, the conviction for the offense did not exist and the offense had not been committed. Therefore, Fernandez could not have benefitted from lenient treatment given in return for his statement and identification. Judge Martha T. Royster further noted at the time of the trial Fernandez had already been sentenced to a one-year probationary term. She noted pursuant to *State v. Rowe*, 57 N.J. 293, 271 A.2d 897 (1970) and N.J.R.E. 609 that cross-examination of Fernandez on a conviction of a disorderly persons offense was prohibited.
>
> Turning to defendant's contention that trial counsel was ineffective for failing to object to the accomplice liability and identification jury instruction, the PCR judge, referring to our earlier decision, noted we had failed to find prejudicial error, instead finding only that the last part of the instruction had been poorly worded. In light of this court's determination, the PCR judge found defendant failed to meet the second prong of the *Strickland/Fritz* analysis as the application of either the plain error or harmless error standards would result in the same outcome.
>
> The PCR court next considered whether defendant's appellate counsel was ineffective for failing to raise on appeal deficiencies in the motion to suppress and the denial of the *Wade* motion without an evidentiary hearing. Citing to the findings of the motion judge, the PCR judge noted that, in deciding the motion to suppress, the motion court based its findings on the credibility of the officers who testified. Based upon that testimony, the motion judge found the show-up identifications were not tainted by suggestiveness, and the trunk of the Dodge was open after the vehicle crashed into the pole and the hand gun was in plain view. The motion judge further found the testimony of the expert called on behalf of the defense to be unconvincing. Judge Royster referred to the transcript of the motion hearing and quoted the motion judge, Judge Peter J. Vasquez, who in response to defense counsel's argument that Fernandez did not make the identification independently and his purported identification was tainted by police suggestiveness, said:
>
> > I just don't follow that argument.

. . . .

> It's not important to my decision because as far as I can tell there's been no testimony or anything in writing put before me other than [that] you don't believe the police officer . . . would show any indication of any -- of the State's involvement in any way in the identification.

The PCR judge found that because the motion judge's decision was based on credibility determinations defendant "fail[ed] to demonstrate that counsel's representation fell below an objective standard of reasonableness."

Judge Royster found that even if she were to accept that the first prong of *Strickland/Fritz* was satisfied, and found that it would have been objectively reasonable for appellate counsel to raise the show-up on appeal, there was nothing in the record or in petitioner's current submission in terms of specific, adequate facts which demonstrated that the identification was in fact unreliable, and that, had the issue been raised, the results of the proceeding would have been different.

*State v. Flowers*, No. A-0683-15T1, 2017 N.J. Super. Unpub. LEXIS 2013, at *4–8 (Super. Ct. App. Div. Aug. 8, 2017).

The Appellate Division then reviewed the applicable standards, finding that Flowers "failed to make a prima facie showing of ineffective assistance of trial counsel within the *Strickland/Fritz* test warranting an evidentiary hearing." *Id.* at *12. The court opined:

> The PCR judge correctly found defendant failed to set forth a prima facie case that trial counsel's performance was both deficient and prejudicial. . . . We agree with the PCR court that trial counsel's conduct falls within the wide range of reasonable professional assistance and sound trial strategy.
>
> . . .
>
> As pointed out by the PCR judge, N.J.R.E. 609 provides, "[f]or the purpose of affecting the credibility of any witness, the witness's conviction of a crime . . . must be admitted unless excluded by the judge" as remote or for other causes. N.J.R.E. 609(a)(1). The Legislature has defined conviction of a crime as an offense "for which a sentence of imprisonment in excess of [six] months is authorized." N.J.S.A. 2C:1-4(a). Disorderly person offenses are not crimes and cannot be used for impeachment purposes. There is no evidence that Fernandez was ever convicted of a crime. His "pattern of misbehavior resulting in three arrests" is of no consequence. Further, as Judge Royster noted,

17

[h]owever, in reviewing everything in the totality of the circumstances, a few things are clear to the court which impact its decision.

First, at the time the identification and statement to the police was made by this witness that particular charge did not exist. So, if we take into question the v[e]racity of the identification and statement of the witness at the time that it was originally made back in 2007, near April, the -- the witness had not yet been charged with this contempt charge. So, the actual[] identification and statement to the police, there's been nothing [im]proper to the court to suggest that the original statement or identification was in any way done for the purposes of reaping benefit or favor from the prosecutors as that charge had not yet existed.

Speculative deficiencies in representation are insufficient to support a claim of ineffective assistance of counsel. *Fritz, supra*, 105 N.J. at 64. Defendant's claims regarding possible benefits to Fernandez are mere speculation. Further, his claims that trial counsel failed to cross-examine Fernandez on his alleged history of arrests, ordinance violations, and disorderly persons conviction is contrary to law and the Rules of Evidence.

We consider next defendant's claim that trial counsel was ineffective because he failed to object to accomplice liability and identification jury charges, which was raised in defendant's direct appeal. Defendant cannot raise as grounds for PCR an issue that was raised in decided on direct appeal. *R.* 3:22-5. Defendant also argues that appellate counsel rendered ineffective assistance by failing to challenge the denial of his motion to suppress the gun that was found in the trunk of his car in plain view, and the denial of his *Wade* motion without an evidentiary hearing. We reject this argument substantially for the reasons expressed by the PCR Judge.

*Flowers*, 2017 N.J. Super. Unpub. LEXIS 2013, at *12-15 (citations omitted).

As to Flowers's argument that trial counsel was ineffective for failing to cross-examine Fernandez about his prior record and pending charges (ECF No. 7-2 at 9), the state courts reasonably found that Flowers failed to state a viable basis for an ineffective assistance claim in light of the following: (1) when Fernandez made the identification and statement he had not yet committed the offense and, thus, could not have benefitted from lenient treatment in exchange for the statement and identification, (2) Fernandez had already been sentenced to a probationary term

before the trial began, and (3) cross-examination on a disorderly persons offense was prohibited under state law. *Flowers*, 2017 N.J. Super. Unpub. LEXIS 2013, at *5–6.

As to Flowers's argument that trial counsel was ineffective for failing to object to the accomplice liability instruction (ECF No. 7-2 at 10), as discussed above, the Appellate Division reasonably determined that any error was harmless and, thus, Flowers failed to establish prejudice as a result of the objectionable phrase. *Flowers*, 2013 N.J. Super. Unpub. LEXIS 1962, at *10. Therefore, even assuming trial counsel rendered deficient performance, Flowers has not met the prejudice prong of *Strickland*. 466 U.S. at 687; *see also Mosley v. Att'y Gen. Pa.*, No. 20-3495, 2022 WL 101932, at *3 (3d Cir. Jan. 11, 2022) (where, "in the context of the record as a whole, the trial court's instructions did not infect the trial by lowering the government's burden of proof, . . . the jury instructions did not violate Mosley's right to due process, and he was not prejudiced by his counsel's failure to timely object to the instruction").

Finally, as to the identification instruction (ECF 7-2 at 11), because, as discussed above, the state courts reasonably determined that the instruction was proper, trial counsel was not deficient in failing to object. *Flowers*, 2013 N.J. Super. Unpub. LEXIS 1962, at *13–14; *see also Echols v. Hainsworth*, No. 18-03574, 2021 WL 1997274, at *13 (E.D. Pa. May 19, 2021) (rejecting habeas challenge that "the Superior Court's ultimate determination that Echols's ineffective assistance claim [concerning jury instructions] was without merit[,]" because "there was no error in the jury instructions, and therefore no deficiency in trial counsel's having failed to object to them").

For these reasons, the state courts' determination that Flowers failed to establish a prima facie case of ineffective assistance of trial counsel was not contrary to or an unreasonable

application of clearly established federal law, nor did it involve or rely upon an erroneous factual determination. Accordingly, Flowers is not entitled to habeas relief on this claim.

Flowers's arguments that appellate counsel was ineffective for failing to raise the issues of the trial court's denial of Flowers's suppression and *Wade* motions are likewise without merit. As to the suppression motion (ECF No. 7-2 at 12–13), the state courts reasonably found that because the motion judge's decision was based on credibility determinations, Flowers "fail[ed] to demonstrate that counsel's representation fell below an objective standard of reasonableness." *Flowers*, 2017 N.J. Super. Unpub. LEXIS 2013, at *6. As the PCR judge stated: "[A]ppellate counsel in this case cannot be deemed ineffective for failing to raise on appeal a motion that was denied as a result of the judge's credibility findings, especially where the court addressed not only the credibility findings, but also addressed the issue if he had found in favor of the expert who was supporting the defendant's position." ECF No. 18-29 at 7. Specifically, the motion judge determined that even if he found Flowers's expert credible, "the contents of the trunk would have been admissible under the inevitable discovery doctrine, [as] the car would have been towed and inventoried." *Id.* at 7; *id.* at 6 (motion judge: "I believe the officer in that he saw the gun in plain sight with the open trunk. I go beyond that because it is clear to me that while a rarely used premise in our law that is a perfect case for inevitable discovery to be applied, and so even if I gave full credence to the expert and no credence to the police officer . . . A disabled vehicle involved in a serious offense of robbery would have definitely been towed and inventoried."). Moreover, as the PCR court held, even if appellate counsel rendered deficient performance in not appealing the denial of the motion, Flowers has not established that the result of the proceeding would have been different. Flowers simply re-states his disagreement with the judge's credibility determination and

opines that there "was no downside" to raising the issue on appeal. ECF No. 7-2 at 13–15. Thus, Flowers has not established prejudice.

As to the *Wade* motion (ECF 7-2 at 13), the state courts reasonably found that, while counsel's performance may have been deficient, Flowers failed to establish prejudice. No 18-29 at 9. The PCR court conducted the following analysis:

> [T]he showup occurred at the scene of the accident and, therefore, it was objectively reasonable that appellate counsel would have raised the issue of suggestibility on appeal. However, even though the representation may have fallen below an objective standard of reasonableness, if given the light most favorable to the defendant, nothing in the record or in petitioner's current submission alleged facts, demonstrate[es] that the identification was in fact unreliable and that had the issue been raised the results of the proceeding would have been different.

> In reviewing the case in the totality of the circumstances, it is clear that the identification was not the sole determination for the case having been decided the way that it had[,] and even had the appeal of the *Wade* hearing been granted, the other evidence would not have necessarily been negated or this decision would not have changed the circumstances of the case, as required in the second prong. Therefore, the court is satisfied that this defendant has not established that there's a reasonable probability that but for counsel's unprofessional errors the results of the proceeding would have been different.

ECF No. 18-29 at 9.

Flowers argues that "[t]he identification procedure used in this case was impermissibly suggestive" because "Fernandez made the identification only after [Flowers] had been arrested and presented to him at the crash scene." ECF No. 15. This conclusory assertion is an insufficient basis upon which to establish prejudice. Moreover, as the PCR court noted, "the identification was not the sole determination for the case having been decided the way that it had." ECF No. 18-29 at 9. There was ample other evidence supporting the guilty verdict, including that Fernandez saw the Dodge near the scene of the crime and recorded the license plate number, as well as the evidence retrieved from the car and on Flowers's and Mallard's person. *Flowers*, 2013 N.J. Super. Unpub. LEXIS 1962, at *2–5; *see also Fowler v. Superintendent Smithfield SCI*, 702 F. App'x 44, 49 (3d

Cir. 2017) ("Given the evidence supporting Fowler's conviction apart from the impermissible identification [by Wagner]"—including Wagner's testimony that he "observed a small green car parked only blocks away from the jewelry store at the time of the robbery, bearing a license plate number that was later found to match Fowler"—"we cannot conclude that the Superior Court reached a decision with which no fairminded jurist could agree."). On these facts, the state courts reasonably found Flowers failed to establish prejudice.

For these reasons, the state courts' determination that Flowers failed to establish a prima facie case of ineffectiveness of appellate counsel was not contrary to or an unreasonable application of clearly established federal law, nor did it involve or rely upon an erroneous factual determination. Accordingly, habeas relief on this claim is denied.

Finally, Flowers's argument that PCR counsel was ineffective for failing to request that the first PCR judge recuse is not a proper claim in a habeas proceeding, as ineffective assistance of PCR counsel is not a valid ground for relief. *See* 28 U.S.C. § 2254(f) (the "ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a [habeas] proceeding"); *Coleman v. Thompson*, 501 U.S. 722, 752 (1991) ("a petitioner cannot claim constitutionally ineffective assistance of counsel in [state post-conviction] proceedings"). Accordingly, habeas relief is also denied on this claim.[6]

---

[6] Flowers further argues in his reply brief that "cumulative effect errors" of counsel denied him his right to effective assistance of counsel. ECF No. 19 at 8. Although Flowers did not properly exhaust this claim in the state courts, the Court will nevertheless consider it on the merits as permitted by 28 U.S.C. § 2254(b)(2). In short, whether considered individually or in the aggregate, Flowers has failed to show that he suffered any prejudice from counsel's alleged deficiencies. The evidence of Flowers's guilt was strong, and even absent the alleged deficient performance, there is no reasonable likelihood that the outcome of his trial would have been different. *See Flowers*, 2013 N.J. Super. Unpub. LEXIS 1962, at *2-5. Flowers's claims thus fare no better in the aggregate than they do individually, and his cumulative ineffective assistance claim is without merit. *See Barahona v. Att'y Gen. of New Jersey*, No. CV 19-200, 2022 WL 16552813, at*8 (D.N.J. Oct. 28, 2022).

IV.     CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Here, reasonable jurists would not find the Court's habeas ruling debatable. Accordingly, no certificate of appealability shall issue.

V.      CONCLUSION

For the foregoing reasons, Flowers's petition is denied with prejudice and no certificate of appealability shall issue.  An appropriate order follows.

DATED:  February 24, 2023


_s/ Claire C. Cecchi_
**CLAIRE C. CECCHI, U.S.D.J.**

23